1  EILEEN M. DECKER
   United States Attorney
2  DOROTHY A. SCHOUTEN
   Assistant United States Attorney
3  Chief, Civil Division
   THOMAS K. BUCK (Cal. Bar No. 70307)
4  Assistant United States Attorney
         Federal Building, Suite 7516
5        300 North Los Angeles Street
         Los Angeles, California 90012
6        Telephone: (213) 894-3989
         Facsimile: (213) 894-7819
7        E-mail: tombuck@usdoj.gov

8  CHRISTOPHER R. BENSON
   Trial Attorney, Torts Branch
9  United States Department of Justice
         Post Office Box 888
10       Ben Franklin Station
         Washington, DC 20044
11       Telephone: (202)598-2210
         Facsimile: (202)616-5200
12       E-mail: Christopher.Benson@usdoj.gov

13 Attorneys for Defendant
   United States of America

14              UNITED STATES DISTRICT COURT

15            CENTRAL DISTRICT OF CALIFORNIA

16

17 AEROS AERONAUTICAL              )
   SYSTEMS CORP.,                  )   CV 15-01712-PSG (PJWx)
18                                 )
                     Plaintiff,    )   **MASTER DISCOVERY AND
19                                 )   PROTECTIVE ORDER**
                                   )
20            v.                   )   **See Court's note at p. 41    PJW**
                                   )
21 UNITED STATES OF AMERICA,       )
   THE DEPARTMENT OF THE           )
22 NAVY,                           )
                                   )
23                                 )
                     Defendants.   )
24 ─────────────────────────────

25

26        WHEREAS, the Parties mutually seek to protect sensitive and privileged

27 materials from public disclosure without jeopardizing Parties' access to relevant

28 information or the public's interest in open proceedings; reduce the time, expense

                                       1

and other burdens of discovery of certain hard copy documents and electronically stored information ("ESI") and privileged materials as described further below; and to better define the scope of their obligations with respect to preserving and producing such information and materials;

This Court having been made aware that the Parties, by and through their counsel, have agreed to the entry of this Master Discovery And Protective Order in the above captioned case, and good cause appearing therefore:

IT IS ORDERED, ADJUDGED AND DECREED as follows:

## A.    **Definitions**

1.    "Drafts," regardless of whether in an electronic or hard copy form, shall mean a preliminary version of a document that has been shared by the author with another person (by email, print, or otherwise).

2.    "Party" or "Parties" mean the Parties to this litigation, including their employees and agents.

3.    "Producing Party" means the party producing documents or ESI.

4.    "Receiving Party" means the party receiving documents or ESI.

5.    "Policy" means a formalized requirement regarding document retention.

6.    "Information" shall be interpreted broadly to include writings and electronically stored information as that term is used in Federal Rule of Civil Procedure 26. Information includes, but is not limited to, Drafts, records, files, correspondence, reports, memoranda, calendars, diaries, minutes, electronic messages, voice mail, e-mail, telephone message records or logs, printouts, document image files, web pages, databases, spreadsheets, software, books, ledgers, journals, orders, invoices, bills, vouchers, check statements, worksheets, summaries, compilations, computations, charts, diagrams, graphic presentations, drawings, films, charts, digital or chemical process photographs, video,

2

phonographic, tape or digital recordings or transcripts thereof, drafts, jottings and notes, studies or drafts of studies or other similar such material. Information that serves to identify, locate, or link such material, such as file inventories, file folders, indices, and file and application metadata, including embedded data such as track changes and comments, is also included in this definition. Information includes both paper documents and electronic files regardless of whether stored on servers, hard drives, removeable computer storage media such as tapes, discs and cards, or other electronic media. For purposes of this Order only, Information does not include tangible things other than paper documents and storage media described herein.

7.     "Controlled Unclassified Information" or "CUI" shall mean any document, data, or ESI that contains, describes or refers to any Export Controlled Information.  Without limiting the scope of these categories, Controlled Unclassified Information includes drafts, notes of counsel and expert witnesses, and similar writings containing Controlled Unclassified Information.

8.     "Export Controlled Information" shall mean, for purposes of this Order, unclassified technical information whose export is subject to export control and whose unrestricted public dissemination could help proliferants or potential adversaries of the United States.  *See* 22 U.S.C. § 2778 (Control of arms exports and imports) as implemented by the State Department by way of its International Traffic in Arms Regulations, 22 C.F.R. Ch. 1, Subch. M.

9.     "Confidential Information" refers to information that a Producing Party claims in good faith to be its trade secret or other confidential research, development, claims or commercial information, or information not in the public domain which is proprietary or competitively sensitive.  "Confidential Information" means:  (a) any type of information that constitutes a trade secret or other confidential research, development, or commercial information within the

3

meaning of Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure; or (b) is
otherwise entitled to protection under Rule 26(c) of the Federal Rules of Civil
Procedure, including but not limited to formulas, product information, confidential
customer lists etc.; (c) any type of financial information that has not been made
public and the disclosure of which the disclosing party contends would cause
substantial harm to the disclosing party's or a third party's financial privacy,
business operations or interests, or divulge a party or third party's personal
financial affairs or transactions, including, but not limited to, any contact
information, business information, invoices, receipts, amount or source of any
income, profits, revenues, losses, or expenditures of any person, firm, partnership,
corporation, or other organization, tax returns or tax related documents, any
financial statements or financial documents, banking records, accounts payable,
accounts receivable, financial statements, or financial performance data; (d) data or
analysis derived from such confidential information, including any summaries,
compilations, quotes, or paraphrases thereof; (e) any other type of information that
has been held to be private and/or confidential in any precedential case decided by
the U.S. Supreme Court, the 9th Circuit, the Federal Court of Appeals, the
California Supreme Court, and the California Appellate Court; (f) information that
any party believes would affect its competitive position or security interests in an
adverse manner; and/or, (g) any type of information gathered/secured from any
third parties during the course of discovery that falls within the scope of foregoing
definition, inclusive of subsections (a)-(f). The term "Confidential Information"
also includes information implicating privacy concerns protected by law, statute or
regulation with respect to individuals, including but not limited to employees. The
term "Confidential Information" includes, but is not limited to, information
protected from disclosure by the Privacy Act, 5 U.S.C. § 552a, the Freedom of
Information Act ("FOIA"), 5 U.S.C. § 552, and/or any other federal or state law to

4

include third-party copyrighted information, which includes, but is not limited to, documents, photographs, videos, and other items that either: (1) bear a copyright notice identifying third parties, who are not Parties to this litigation, as the owner of the copyright; or (2) for which a party to this litigation has been informed a third party, who is not party to this litigation, claims copyright on the work. "Confidential Information" also includes Controlled Unclassified Information or CUI.

10.     "Forensically Sound Copy" of an electronic file shall mean a copy made by a method that (a) verifies complete and successful transfer (for instance by use of a hash value); (b) does not alter, in any way, the file and application metadata (to the extent it exists) associated with that electronic file; and (c) is documented by a log identifying the date and time of copying, the software used to complete the copy, the original location of the file, and the individual making the copy.

11.     "Potentially Relevant Information" shall mean Information that is discoverable in this action pursuant to Federal Rule of Civil Procedure 26(b), as well as any Information that will be discoverable but for the application of a privilege or protection such as the attorney work product protection or the attorney-client privilege.

12.     "Preserve(d)" shall mean to keep and not to alter any Potentially Relevant Information as to its form, content or manner of filing. In the case of an electronic file, it means to retain the original file (including its file and application metadata to the extent it exists) or a Forensically Sound Copy of that file.

**B.   Requirements**

13.     This Order applies to Potentially Relevant Information as defined in Paragraph 11. Nothing herein shall be construed as impacting, changing, altering, or obviating the Parties' obligation to preserve physical evidence, such as

1    computers, hard drives, and servers.

2        14.    The Parties shall take reasonable steps to Preserve all presently
3    existing Potentially Relevant Information that is in their possession, custody or
4    control on the date of this Order, or that comes into their possession, custody or
5    control after the date of this Order.

6        15.    With respect to Potentially Relevant Documents, the Parties need only
7    preserve one copy of each potentially relevant non-identical document, but shall
8    retain any existing information related to the custodians of any duplicates that are
9    not Preserved for production.

10       16.    The Parties need retain only one copy of a Potentially Relevant
11   electronic message sent to multiple Parties so long as the copy retained contains
12   any existing metadata identified in Appendix A attached to this Order.

13       17.    Potentially Relevant Information in the possession of an individual
14   employed by a Party is not within the possession, custody or control of the Party if
15   that information was (a) obtained or created by the individual on his personal time
16   and not within the scope of his employment duties for the Party; (b) obtained or
17   created using personal equipment rather than equipment owned or controlled by
18   the Party; and (c) retained exclusively in the individual's personal files or
19   electronic devices.

20       18.    By Preserving Potentially Relevant Information, the Parties are not
21   conceding that such material is discoverable in this matter, nor are the Parties
22   waiving any claim of privilege.

23   **C.    Documents and Other Materials Containing Confidential Information**

24       19.    This Order governs the treatment and handling of all documents and
25   other materials containing or revealing Confidential Information (including,
26   without limiting the generality of the foregoing, answers to interrogatories,
27   responses to requests for production, responses to requests for admission,

28

deposition testimony, deposition transcripts, deposition videos, deposition exhibits, and other written, recorded or graphic matter, and copies of the foregoing) produced in accordance with the Federal Rules of Civil Procedure or any order of the Court, by any party or witness ("Producing Party") to any other party in this matter ("Receiving Party").

20.    In accordance with the terms of this Order, pursuant to 5 U.S.C. § 552a(b)(11), the United States is authorized to release to counsel for the other parties in this case discovery, including reports, records of databases searched, and files, unredacted of Privacy Act-protected information, without obtaining prior written consent of the third parties whose names, addresses, and other identifying information may be present in such documents.

21.    Any Producing Party furnishing documents or any other materials which in the opinion of the Producing Party contains or otherwise reveals Confidential Information, or information protected from disclosure by the Privacy Act, 5 U.S.C. § 552a, the FOIA, 5 U.S.C. § 552, and/or any other federal or state law, may designate such documents and other materials as subject to this Order by so marking them as "SUBJECT TO PROTECTIVE ORDER." If applicable, the endorsement must appear on each image of the document and be included on the label of any production media with these endorsed documents. The load or dat file metadata field record for these endorsed documents and for applicable documents produced as native files only must have "SUBJECT TO PROTECTIVE ORDER" or "SUBJECT TO PROTECTIVE ORDER – ATTORNEYS' EYES ONLY," or "MAY CONTAIN CUI," as appropriate, entered in the "PROPERTIES" field.

22.    All documents containing the names, addresses, social security numbers, tax identification numbers, e-mail addresses, phone numbers, financial information, and/or any other personal or identifying information otherwise covered the by Privacy Act, 5 U.S.C. § 552a, shall be treated as subject to this

7

1   Order, regardless of whether so marked in the manner set forth in Paragraph 21.

2       23.     The Parties must not indiscriminately designate materials or

3   information as Confidential Information.

4       24.     Documents and other materials designated as Confidential

5   Information, and the information contained therein, shall be used by the Receiving

6   Party only for purposes related to this action and for no other purpose, under other

7   restrictions as explained elsewhere in this Order, and under no circumstances other

8   than those specifically provided for in this or a subsequent order of this Court, shall

9   the Receiving Party disclose said documents and other materials or the information

10  contained therein to persons or entities other than the following:

11      a.      The Court, pursuant to this Order;

12      b.      Outside or inside counsel for a party;

13      c.      Employees or agents of such counsel or party assigned and necessary

14  to assist such counsel in the conduct of this litigation;

15      d.      Experts or consultants who have been retained for the purpose of

16  assisting in the conduct of this action;

17      e.      Other persons upon order of this Court or upon stipulation of the

18  Parties.

19  Counsel shall not disclose documents or materials marked as "SUBJECT TO

20  PROTECTIVE ORDER – ATTORNEYS' EYES ONLY" to their clients or to any

21  of the client's officers or employees or to any third party, except as such third party

22  is specified in "a", "b", "d", or "e" of this Paragraph 24.

23      25.     Prior to receipt of any documents or other materials designated as

24  Confidential Information, or the information contained therein, any and all counsel

25  of record for a party shall sign and serve the "Acknowledgement of Master

26  Discovery And Protective Order" attached to this Order as Appendix B on all

27  counsel of record for all Parties. Service of the signed "Acknowledgement of

28

Master Discovery And Protective Order" may be completed by e-mail.

26.     Prior to disclosing documents or other materials designated as Confidential Information, or any information contained therein, to any other aforementioned individuals designated in Paragraph 24(c) – (e), counsel for the party seeking to disclose such documents or other materials, or the information contained therein, must have such individuals sign the "Acknowledgment of Master Discovery And Protective Order" attached to this Order. The original signed "Acknowledgement of Master Discovery And Protective Order" completed by any individual designated in Paragraph 24(c)-(e) shall be retained by counsel seeking to disclose such documents or other materials, or the information contained therein, to any such individual until this case is conclusively resolved. The signed "Acknowledgment of Master Discovery And Protective Order" may only be disclosed pursuant to Court order.

27.     Each individual given access to any documents or other materials designated as Confidential Information, or the information contained therein, is hereby advised that such documents or other materials and the information contained therein is being disclosed pursuant and subject to the terms of this Order, may not be disclosed other than pursuant to the terms thereof, and may be used only for purposes related to this action and for no other purposes.

28.     All information disclosed at (a) the deposition of a party or one of its present or former officers, directors, employees, or agents, or independent experts retained by counsel for the purpose of this litigation, or (b) the deposition of a third party (which information pertains to a party) may be designated by any party as being Confidential Information and that testimony is subject to the provisions of this Order, unless the Parties otherwise agree by written stipulation. A party that designates information as Confidential must follow the procedure for notification as described in Paragraph 37.

29.     In the event that counsel for any party determines to file with or submit to this Court any documents or other materials designated as Confidential Information, or any information contained therein, such filings or submissions, unless otherwise agreed to by the Parties or ordered by the Court, shall be filed *in camera* under seal in accordance with the procedures set forth in this Court's Local Rules 79-5, 79-6 and 79-7.

30.     Each person given access to, receiving, or in possession of any documents or other materials designated as Confidential Information, or any information contained therein, shall maintain such information, documents and other materials in a manner sufficient to protect against unauthorized or inadvertent disclosure, and refrain from disclosing in any manner such information, documents and other materials except as specifically provided for by the terms of this Order.

31.     If any party objects to the designation of any documents or other materials as Confidential Information, such party shall attempt to resolve, through consent of the opposing party, the question of whether such documents or other materials or information contained therein should be treated as subject to this Order. A party that challenges information as Confidential must follow the procedures as described in Paragraph 37. Until this Court enters an order determining the status of the document or other materials being objected to, such document or other materials and the information contained therein shall be treated as designated pursuant to this Order, unless the Parties otherwise agree by written stipulation.

32.     Within three (3) months after the conclusion of this litigation (commencing from the date on which the time for filing an appeal from entry of judgment expires with no party taking an appeal, or in the event an appeal is taken, from the date of exhaustion of any and all appeals), all documents or other materials designated as Confidential Information and copies thereof shall either be

10

destroyed by any party or their counsel of record in possession of such documents, or returned to counsel of record for the Producing Party. Absent a request by a Producing Party for return of its documents, if Plaintiff's counsel of record elects to destroy the documents or other materials designated as Confidential Information, said persons shall submit a certification to the counsel of record for all other Parties attesting that all such documents and materials were destroyed, within fourteen (14) days of the destruction. The United States, if the Receiving Party, shall retain or destroy all documents or other materials designated as Confidential Information consistent with its records schedule and obligations under the Federal Records Act, 44 U.S.C. Chapter 31. Absent a request by a Producing Party for return of its documents, any individuals listed in Paragraph 24(c)-(e) of this Order to whom documents or other materials designated as Confidential Information were provided shall return such documents or other materials to the counsel of record from whom it was received, who shall then either destroy or return such documents or other materials in accordance with this paragraph. Documents or other materials designated as Confidential Information and all copies thereof which contain markings constituting attorney work product need not be returned or destroyed, provided they remain subject to the provisions of this Order.

**D.**   **Protection of Privileges.**

Pursuant to Rules 16(b) and 26(c) of the Federal Rules of Civil Procedure, and pursuant to Rule 502 of the Federal Rules of Evidence, it is hereby ORDERED:

33.    This Order invokes the protections afforded by Rule 502(d) of the Federal Rules of Evidence. Accordingly, the provisions in Rule 502(b) of the Federal Rules of Evidence will not apply to the disclosure of communications or Information in discovery in this matter.

34.     The prosecution and defense of this action may require each Party to review and to disclose large quantities of information and documents, including ESI, through the discovery process. As a result, page-by-page preproduction privilege review would likely impose an undue burden on the Parties' resources.

35.     Each party is entitled to decide the appropriate degree of care to exercise in reviewing materials for privilege, taking into account the volume and sensitivity of the materials, the demands of the litigation, and the resources that the party can make available. Irrespective of the care that is actually exercised in reviewing materials for privilege, the Court hereby orders pursuant to Rule 502(d) of the Federal Rules of Evidence that disclosure of privileged or protected information or documents in connection with this litigation will not constitute or be deemed a waiver or forfeiture—in this or any other federal or state proceeding— of any claims of attorney-client privilege, work product protection, or any other privilege that the disclosing Party would otherwise be entitled to assert with respect to the information or documents and their subject matter.

36.     The Court further orders that because expedited or truncated privilege review is likely necessary for the just, speedy, and inexpensive resolution of this matter, and because Rule 502(d) does not preserve privileges other than the attorney-client privilege and work-product protection, the Parties are not required, but may, review each and every page of the materials produced in discovery for all applicable privileges. Accordingly, the disclosure of privileged or protected information or documents in discovery conducted in this litigation will be deemed unintentional, inadvertent, and compelled by order of this Court. Such disclosure will not constitute a waiver of the disclosing party's right to claim any privilege or protection, including without limitation the deliberative process privilege, that would have applied to the information or documents or their subject matter but for the disclosure, provided only that the party disclaiming waiver employed

procedures reasonably designed to identify, withhold, and account for privileged materials. However, the Parties shall not argue, in this forum or any other, that any privileges were waived as a result of disclosures in this litigation irrespective of the procedures used to locate privileged materials.

37.     A Party who wishes to assert privilege or other protections as to a document or ESI produced that contains privileged or protected information shall notify the Receiving Party of the identity of the document or ESI by its specific identifying characteristic, such as by Bates number. This notice shall contain information sufficient to identify: (1) the document or ESI, including information as necessary to locate the materials produced; (2) the privilege or other protection that applies; and (3) the date the document was produced. Notice may be made orally on the record at a deposition or hearing, provided that it is subsequently confirmed in writing within ten (10) days from the date of the hearing or receipt of the deposition transcript by the party asserting privilege or other protection.  If the Producing Party claims that only a portion of a document is privileged, the Producing Party shall provide, along with the notice of the claim of privilege or protection, a new copy of the document with the allegedly privileged or protected portions redacted. Any party that complies with this paragraph will be deemed to have taken reasonable steps to rectify disclosures of privileged or protected information or materials.

The Parties agree that the documents provided as Initial Disclosures under Rule 26(a)(1) of the Federal Rules of Civil Procedure may contain documents that contain Confidential Information.  The Parties agree to meet and confer to discuss the proper procedure to ensure that all of the documents produced prior to the to the entry of this Master Discovery and Protective Order are marked and protected according to this Order.

<u>Deliberate Withholding of Privileged or Protected Documents or ESI</u>

A Party may challenge the assertion of any privilege or other protection for any documents or ESI originally withheld from production, or asserted as an objection to any interrogatory or interposed during any deposition by filing a timely motion to compel, provided, however, that within ninety (90) days of the objection or withholding, the moving party notifies in writing to the Party claiming the privilege or protection that the assertion of a privilege or protection is being challenged. The notice required by this paragraph shall contain information sufficient to: (1) identify the document, ESI, interrogatory, or deposition at issue; (2) identify the privilege or protection that is being challenged; and (3) briefly explain the basis for the challenge. The Parties shall in good faith attempt to resolve the matter. If the matter has not been resolved within ten (10) days from the receipt of the notice required by this paragraph, the party challenging the privilege or protection may file a motion to compel and must not assert, as a ground for compelling disclosure, the fact or circumstances of the disclosure. Pending resolution of the motion, the Parties shall not use the challenged information for any other purpose and shall not disclose it to any person other than those required by law to be served with a copy of the sealed motion.

<u>Inadvertent Production of Privileged or Protected Documents or ESI</u>

Upon notice of a privilege or protection from the Producing Party pursuant to this Order, the Parties shall attempt to reach agreement regarding the assertion of privilege or protection that may apply to the document or ESI or any portion of the document or ESI. If the Parties do not reach an agreement within twenty (20) days after notice ("the meet and confer period"), the Receiving Party is to immediately return, sequester or destroy the document or ESI received and all copies thereof, unless it received the original, in which case it shall return the original to the Producing Party.

(Copies of privileged or protected documents or information that have been stored on electronic media that is not reasonably accessible, such as disaster recovery backup media, are adequately sequestered as long as they are not restored; if such data is restored, the Receiving Party must take steps to re-sequester the restored information.) If the Receiving Party disclosed the information before being notified, it must take reasonable steps to prevent further use of such information until the claim is resolved. The Producing Party must preserve the information until the claim is resolved. Fed. R. Civ. P. 26(b)(5)(B).

Within sixty (60) days of the expiration of the meet and confer period described herein, any party seeking to contest the assertion of privilege or protection as to inadvertently produced documents or ESI must request *in camera* review of the documents or ESI in question by filing a motion that does not disclose the content of the document(s) or ESI over which the Producing Party has asserted privilege or protection. If the Receiving Party fails to file such a motion within the sixty (60) days period, it waives any right to dispute the privilege or protection with respect to that document or ESI unless good cause exists for the failure to file such a motion (for example, evidence not available at the time privilege was asserted demonstrates the document or ESI was not privileged.)

At all times after the Producing Party provides the requisite notice, the Receiving Party shall not refer to the allegedly privileged or protected material in any manner, whether written or oral, in any interrogatory, request for admission, document request, interview, deposition, oral argument, trial or submission to the court (other than referencing the allegedly privileged or protected materials for the sole purpose of contesting the asserted privilege, as outlined in the preceding paragraph), nor will the receiving party disclose the

substance of that material to any third party; however, the Receiving Party may reference the allegedly privileged or protected material to the court.

Nothing in this Order shall prohibit a party, consistent with the Federal Rules of Civil Procedure, Federal Rules of Evidence, or Orders entered by the court, from withholding from review and/or production any document or ESI covered by any privilege(s) or protection(s).

38. If a Party identifies a document that appears on its face or in light of facts known to the Party to be subject to another Party's claim of privilege, the Party identifying the potential claim of privilege is under a good-faith obligation to notify the Party holding the potential claim of privilege. Such notification shall not waive the identifying Party's ability to subsequently challenge any assertion of privilege with respect to the identified document in accordance with Paragraph 37.

39. The Parties may stipulate to extend the time periods specified in Paragraph 37.

40. Nothing in this Order overrides any attorney's ethical responsibilities to refrain from examining or disclosing materials that the attorney knows or reasonably should know to be privileged and to inform the disclosing party that such materials have been produced.

41. Once challenged, the Party wishing to assert a claim of privilege retains the burden of establishing the applicability of the claimed privilege by a preponderance of the evidence. This Order does not preclude a Party from voluntarily waiving any claims of privilege. The provisions of Rule 502(a) of the Federal Rules of Evidence apply when a Party uses privileged information to support a claim or defense.

**E.   Controlled Unclassified Information**

WHEREAS, the discovery phase of this litigation may require production of certain Controlled Unclassified Information or CUI to the

Parties:

WHEREAS, the discovery phase of this litigation may also result in the inadvertent disclosure of certain categories of Controlled Unclassified Information or CUI that is not relevant to discovery requests in this litigation to the Parties;

WHEREAS, various published Federal regulations, Orders, and guidance govern the possession, use, viewing, disclosure, and transfer of such Controlled Unclassified Information or CUI in a non-litigation setting, but do not set forth specific instructions for implementing those various Federal directives in the conduct of litigation;

IT IS HEREBY ORDERED, pursuant to Federal Rule of Civil Procedure 26(c) and the general supervisory authority of the Court, and for good cause having been shown, THAT:

42.     Except as otherwise stated in this Order, the Producing Party shall produce, in response to a valid discovery request, otherwise discoverable information in its possession, custody or control that may contain Controlled Unclassified Information in accordance with Section E of this Order.  The Receiving Party shall handle such information in accordance with Section E of this Order.  Documents containing controlled unclassified information shall be designated "MAY CONTAIN CUI."

43.     The Producing Party will make good faith efforts to segregate any documents containing Controlled Unclassified Information prior to production of documents to a Party.  If a document containing Controlled Unclassified Information is relevant to the litigation, Producing Party will notify the Receiving Party in writing of the existence of such document(s) including the title, date, author(s) and recipient(s) of such document(s).  If a Party believes it may wish to use such documents in the litigation, the

17

Producing Party will provide copies of such documents to that Party, which shall be maintained only on servers or other electronic media located in the United States and shall be viewed and used only by United States-citizen attorneys to the extent necessary to meet and confer with the Producing Party regarding the use of such document in the litigation.  If the Parties cannot agree regarding use of such documents in litigation, the Parties shall seek resolution from the Court; any document containing CUI submitted to the Court for review will be filed under seal.

44.     Upon receipt of documents or data produced with the legend "MAY CONTAIN CUI" that were not identified by the Producing Party as containing CUI pursuant to its good faith review set forth in Paragraph 43, the Receiving Party shall initially maintain those documents and data only on servers physically located in the United States and shall provide access to the documents and data only to United States citizens.  After the Receiving Party has completed a good faith review of those documents and data and concluded, to the best of the Receiving Party's knowledge, either that (a) none contain CUI or that (b) it has segregated and notified the Producing Party of any document(s) it believes contains Controlled Unclassified Information in accordance with Paragraph 45, the Receiving Party may then permit normal access to all documents not specifically segregated pursuant to Paragraphs 43 or 44(b).

45.     In the event a Receiving Party, in the course of its good faith review pursuant to Paragraph 44 or otherwise, reasonably believes that document(s) in its possession contain Controlled Unclassified Information, it shall promptly notify the Producing Party about such documents, sequester all copies of such document(s), refrain from further copying or distribution of the subject material, and comply with any reasonable instructions provided by the

Producing Party regarding proper handling of the material.  Should the Parties dispute the reasonableness or applicability of the instructions, the Receiving Party shall comply with such instructions unless or until otherwise ordered by the Court.

a.   If the Receiving Party believes the document(s) is relevant to this litigation, it shall limit the viewing and use of such document(s) only to United States-citizen attorneys to the extent necessary to meet and confer with the Producing Party regarding the use of such document in the litigation.  If the parties cannot agree regarding use of such documents in litigation, the parties shall seek resolution from the Court; any documents containing CUI submitted to the Court for review shall be filed under seal.

b.  If the Receiving Party believes the document(s) is not relevant to this litigation, it shall (i) promptly return and/or destroy all copies of the subject material it its possession in accordance with any instructions provided by the Producing Party pursuant to this Paragraph 45, and (ii) take reasonable steps to ensure all copies of the subject material distributed to other counsel or non-parties is returned and/or destroyed in accordance with this Paragraph 45. Electronic versions of any such documents shall be removed from all systems by reasonable technological means which ensure the information cannot be recovered.  Should the Producing Party contend that additional steps are legally required, the Parties shall meet and confer regarding such steps and, if the Parties are unable to reach agreement, raise the issue with the Court for resolution.

46.     In the event that the Producing Party claims that it inadvertently produced Controlled Unclassified Information, it shall promptly notify all

Parties to whom such material was produced or disclosed of the Producing Party's intent to protect such material. Upon receiving a notice from the Producing Party pursuant to this Paragraph 46, the Receiving Party shall immediately sequester all copies of the document(s), refrain from further copying or distribution of the subject material, except as provided in subparagraph (a), and comply with any reasonable instructions provided by the Producing Party regarding proper handling of the material. In the event the Parties dispute the reasonableness or applicability of the instructions, the Receiving Party shall comply with such instructions unless or until otherwise ordered by the Court.

a. If the Producing Party believes that the document(s) containing Controlled Unclassified Information is relevant to this litigation, it will so notify all Parties to whom such material was produced or disclosed and shall meet and confer with the Parties regarding use of the document(s). During the meet and confer process, the Parties shall limit the viewing and use of such document(s) only to United States-citizen attorneys to the extent necessary to meet and confer with the Parties to the litigation. If the Parties cannot agree regarding use of such documents in litigation, all parties shall seek resolution from the Court; any document containing CUI submitted to the Court for review will be filed under seal.

b. If the Producing Party believes that the document(s) containing Controlled Unclassified Information is not relevant to this litigation, it will so notify all Parties to whom such material was produced or disclosed. If the Receiving Party wishes to challenge the Producing Party's relevancy determination, the Parties shall meet and confer in accordance with subparagraph (a).

20

47.     If the Receiving Party does not intend to challenge the Producing Party's' relevancy determination pursuant to Paragraph 46(b), or if the Parties agree or the Court orders that a document is not relevant or will not be used in the litigation pursuant to Paragraph 46(b), consistent with the Federal Rule of Civil Procedure 26(b)(5)(B), the Receiving Party shall, in addition to the requirements of Paragraph 46, (i) return and/or destroy all copies of the subject materials in its possession in accordance with any instructions provided by the Producing Party pursuant to Paragraph 46, and (ii) take reasonable steps to ensure all copies of the subject material distributed to other counsel or non-parties is returned and/or destroyed in accordance with this Paragraph 47. Electronic versions of any such documents shall be removed from all systems by reasonable technological means which ensure the information cannot be recovered.  Should the Producing Party contend that additional steps are legally required, the Parties shall meet and confer regarding such steps and, if the Parties are unable to reach agreement, raise the issue with the Court for resolution.

48.     Where an inadvertently produced document containing Controlled Unclassified Information was originally produced in electronic format on media containing production materials that are not subject to any exemption from production, the Producing Party shall promptly provide replacement production media to the Receiving Party.

49.     The inadvertent disclosure of Controlled Unclassified Information by the Producing Party in this Action shall not result in a waiver of any restrictions on the use of Controlled Unclassified Information or for any other materials containing the same or similar subject matter.  Nothing in this Order changes, modifies or diminishes any requirements imposed on an individual to protect CUI pursuant to applicable laws, regulations, or

directives.  Nothing in this Order shall be read to enhance or negate any argument that any such laws, regulations, or directives apply to any particular document.  Notwithstanding any federal statute or regulation, no agency, officer, employee or attorney of any Party shall be subject to any civil or criminal penalty or sanction relating to the disclosure or use of Controlled Unclassified Information, provided that such disclosure or use is made pursuant to this Order, other than this paragraph.

**F.** **Preparation of Privilege Log.**

50.     Any document falling within the scope of any request for production or subpoena that is withheld on the basis of a claim of attorney-client privilege, work product, or any other claim of privilege or immunity from discovery is to be identified by the Producing Party in a privilege log, which the Producing Party shall produce in an electronic format that allows text searching and organization of data.

51.     The Producing Party shall produce privilege logs no later than thirty (30) business days after withholding documents pursuant to a claim of privilege. For each document for which a Producing Party asserts that a privilege applies, the Producing Party must include in the privilege log the information required by Federal Rule of Civil Procedure 26(b)(5), including the following:

a.     Bates range of the document withheld as privileged;

b.     assertion of the ground(s) alleged for withholding such document;

c.     the date, if available, of the document or communication;

d.     the identity of its author and signatories and to whom it was sent, if available; and

e.     a description of the withheld document, communication or tangible thing in a manner that, without revealing information claimed privileged, will enable a party to assess the validity or efficacy of the privilege claim.

52.     Notwithstanding a claim of privilege, any purportedly privileged document containing non-privileged matter must be: (i) produced with the purportedly privileged portion redacted, with the redacted portion indicated on the document itself, and (ii) listed on the privilege log to be provided pursuant to Paragraph 51.

53.     To assist in the prompt resolution of disputed claims of privilege, upon request by the Court, the Producing Party shall submit to the Court under seal, unredacted copies of all documents for which there is a disputed claim of privilege. The Parties must follow the procedures in Paragraph 37 for disputed claims of privilege for documents or ESI listed on the privilege log, or for disputed claims of privilege for inadvertently produced documents or ESI.

54.     The Parties may stipulate to extend the time period specified in Paragraph 51.

55.     The obligation to provide a log of privileged or work product materials pursuant to Rule 26(b)(5)(A) presumptively shall not apply to the following privileged or work product materials created on or after March 9, 2015:

a.  Communications exclusively between a party and its counsel;

b.  Work product created by counsel, or by an agent of counsel other than a party or an employee of a party; or

c.  Internal communications within (a) a law firm, (b) a legal assistance organization, (c) a governmental law office, or (d) a legal department of a corporation or another organization.

56.     Threaded e-mails. An e-mail shall be treated as a single document regardless of the number of threaded e-mails contained within the message body. The privilege log for an e-mail withheld under a claim of privilege, to the extent any is required, shall identify the author, recipient(s), subject, dates and times based on the metadata (to the extent it exists), from the top level message, and shall

23

not include data from any e-mail embedded in the message body. An e-mail thread contained within a single document need only be recorded once on the Producing Party's privilege log, even if a privilege is asserted over multiple portions of the thread. However, if an e-mail contains both privileged and non-privileged communications, the nonprivileged, responsive communications must be produced. This requirement should be satisfied by producing the original of the threaded, non-privileged e-mail, but if the original is not available, it may be satisfied by producing a redacted version of the privileged e-mail.

**G.    Document Production**

57.    Any responsive documents that exist in locations or formats not discussed in these production specifications remain responsive and arrangements should be made with the Parties to facilitate production.

58.    General Format of Production. The Parties will produce documents either (i) as electronic images with associated text files, with reasonably producible metadata (to the extent it exists), or (ii) in native format, as further described herein.

59.    ESI Production. The Parties will produce ESI with the exception of inaccessible storage media as described below. ESI will be searched on a custodian and/or search term basis, as described in Paragraph 68. With respect to production of ESI, the following applies:

a.    E-mail from e-mail repositories ("E-Mail") will be produced as image files with related searchable text and reasonably producible metadata (to the extent it exists) as described in the "Metadata Fields for Production," which is attached and incorporated as Appendix A [hereinafter "applicable metadata"]. E-mails received outside e-mail repositories or saved in other formats (i.e., as pdf) will be produced as "Other ESI." Documents attached to emails will be extracted and produced as "Other ESI" children documents of

1  the parent e-mail.

2      b.    Other electronic documents and files ("Other ESI") will be

3  produced as .tif image files with related searchable text and applicable

4  metadata (to the extent it exists) as described in the "Metadata Fields for

5  Production," which is attached and incorporated as Appendix A except for:

6          1.    All spreadsheet (e.g. Access Databases, Excel, Comma

7  Space Value (CSV), etc.) files will be produced in native format with

8  applicable metadata (to the extent it exists). Where a party redacts a portion of

9  a spreadsheet(s), the Parties will meet and confer regarding production of the

10  redacted spreadsheet(s) in .tif;

11         2.    PowerPoint files will be produced in native format with

12  applicable metadata (to the extent it exists). Where a party redacts a portion of

13  a PowerPoint slideshow, the redacted PowerPoint file will be produced as

14  a .tif;

15         3.    The Parties will discuss any specialized databases or other

16  categories of documents that are responsive to the Parties' requests. The

17  Parties must confer and reach agreement on what information to extract and

18  how to produce it prior to any production.

19         4.    Potentially privileged documents shall be withheld from

20  production; their Bates numbers may be listed as gaps on an "Exception Log"

21  sent with production of that Bates range.

22         5.    Documents considered "publically available" such as

23  published articles, postings to public web sites (except postings to Social

24  Media websites, e.g. Twitter, Facebook, etc.) will not be produced, but the

25  location of such "publically available" information will be identified by the

26  Producing Party to the Receiving Party.

27         6.    The Producing Party must discuss the potential export

28

formats with the Receiving Party before collecting information from Social Media websites (e.g. Twitter, Facebook, etc.) to ensure it is collected and produced in a way that preserves the original metadata, has a clear chain of custody, and provides as much information as possible regarding the source and history of each individual communication.

60.   Paper ("Hard Copy") Documents. Hard-copy documents will be produced as image files (as explained in Paragraph 61) with OCR text on a rolling basis. All hard-copy documents will be converted into .tif images for production purposes and the Producing Party will address any exceptions with the Receiving party. The Parties shall meet and confer to discuss documents that present imaging or formatting problems in advance of production. To the extent exceptions to the foregoing are required, the Parties will meet and confer to discuss alternative production requirements, concerns, or formats in advance of production.

61.   Form and Manner of Production.

a.   Unless subject to the special handling instructions outlined in Paragraph 63, production document images will be provided in single-page .tif format.

b.   All images generated from hard copy documents shall be scanned as black and white images at 300 d.p.i. resolution and shall be saved and produced in a Group 4 compression single-page ".tif" format and reflect, without visual degradation (if possible), the full and complete information contained on the original document.

c.   All images generated from responsive native electronic documents shall be saved electronically (or "printed") in a Group 4 compression single-page ".tif" image format that reflects the full and complete information contained on the original document except as identified in Paragraph 59(b)(1).

d.   Encrypted documents will be decrypted if the password key is

26

available and the decrypted version will be produced.

e.    An "Exception Log" (if applicable) will be included with each production to document production anomalies such as Bates number gaps. The Log will be indexed using the Bates or other DOCID number for each document listed in the report.

f.    The Parties shall produce documents in a "load file" format that is compatible with a commercially available document management software, such as Concordance, to accompany the images. The load file shall include information about where each document begins and ends to facilitate the use of the produced images through a document management or litigation support database system. The Parties shall meet and confer to the extent reasonably necessary to facilitate the import and use of the produced materials with commercially available document management or litigation support software.

g.    Productions should include a standard Image Cross Reference file that associates each Bates number with its corresponding single-page ".tif" image file. The Cross Reference file should also contain the image file path for each Bates numbered page.  Image Cross Reference Sample Format:

USAI00100000001,OLS,D:\DatabaseName\Images\001\USA00100000001.tif,Y,,,

USAI00100000005,OLS,D:\DatabaseName\Images\001\USA00100000005.tif,Y,,,

USA00100000008,OLS,D:\DatabaseName\lmages\001\USA00100000008.tif,Y,,,

h.    Productions should also include a "text load file" containing delimited text that will populate fields in a searchable, flat database environment. ASCII text delimited load files are defined using the following delimiters:

Field Separator = ^ or Code 094

Text Qualifier = | or Code 124

Substitute Carriage Return or New Line = () or Code 013

i.    There should be one line for every record in a collection.

j.    The load file must contain a field map/key listing the metadata/database fields in the order they appear within the data file. For example, if the data file consists of a First Page of a Record (starting Bates), Last Page of a Record (ending Bates), Custodian, Document ID, Document Date and File Name, then the structure may appear as follows:

|BEGDOC|^|ENDDOC|^|CUSTODIAN|^|DOCID|^|DOCDATE|^|FILENAME|

The extracted/OCR text for each document should be provided as a separate single text file. The file name should match the BEGDOC or DOCID for that specific record and be accompanied by the .txt extension.

62.    <u>Document Unitization.</u> To the extent possible and on a going-forward basis, the Parties will endeavor to apply unitization practices consistent with the following description. Each page of a hard copy document shall be scanned into an image. If a document is more than one page, the unitization of the document and any attachments shall be maintained as it existed in the original when creating the image file. For documents that contain fixed notes, the pages will be scanned both with and without the notes and those pages will be treated as part of the same document. The relationship of documents in a document collection (e.g. cover letter and enclosures, email and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) shall be maintained through the scanning or conversion process. If more than one level of parent-child relationship exists, documents will be kept in order, but all will be treated as children of the initial parent document. Such information shall be produced in the load file, as hereafter defined, in a manner to enable the parent-child relationship among documents in a document collection to be reconstituted by the Receiving Party in commercially available document management software, such as Concordance. Electronic files will be unitized

according to the source file boundaries.

63.    <u>Color.</u> Dedicated picture files (e.g., .jpg, .jpeg, .gif, .bmp), video files (e.g., .wma, .mov, .mpg, .wmv, .avi, .asf), and computer animation files (e.g., .avi, .gif, .mpg, .gif, .mpeg, .wmv), shall be produced in color. If other original documents contain color, the Parties will honor reasonable requests to either produce the original document for inspection and copying or produce a color image of the document.

<u>Duplicates.</u> Each Party will dedupe data at the Party level using the common MD5 "hash" process as outlined below. Deduplicating is not applicable to "Hard Copy" but should be done for all "E-Mail" and "Other ESI" files.

**<u>MD5 HASH</u>**

To create an MD5 Hash Value used to dedupe "Other ESI" stream only the internal binary content through the MD5 algorithm.

To create an MD5 Hash Value used to dedupe "E-Mail," combine the binary values of the following fields and stream that through the MD5 algorithm:

a.    To

b.    From

c.    CC

d.    BCC

e.    Subject

f.    Date Sent

g.    Body

h.    Name of attachments

Where a single document has more than one identical copy based on the MD5 hash value (i.e., the documents are visually the same and contain the

29

same electronic text), the Parties need only produce a single copy of that document. In such cases, the Parties will provide metadata (to the extent it exists) for that document which identifies every custodian from whom that document was collected as of the date of production. The "original" document would have multiple custodians listed in the "Custodian" metadata field. If additional copies of the document are identified later, a metadata overlay may be sent to the Parties to update the custodian field at their end. If a duplicate document exists that is part of a document family, the duplicate will only be removed, pursuant to the terms of this paragraph, if the entire family is removed as a duplicate, i.e. a single document will not be removed from a family even if it is a duplicate.

64.    Bates Numbering.

a.    For the United States agencies, the Bates number will not be endorsed on the image but just assigned to each image or native file prior to being sent to the Department of Justice. Other Parties will produce imaged documents with a legible, unique page identifier ("Bates number") electronically "burned" onto each page, at a location that does not obliterate, conceal, or interfere with any information from the source document. This should generally be the bottom right side of each image; use Arial font at 12 pt. for this numbering.

b.    No other legend or stamp will be placed on the document image other than the "SUBJECT TO PROTECTIVE ORDER" or "SUBJECT TO PROTECTIVE ORDER – ATTORNEYS EYES ONLY" or "MAY CONTAIN CUI" legend (where applicable), redactions (consistent with this Order, or any other protective orders agreed to in the future), classification and declassification markings, and the Bates number identified above.

c.    The "SUBJECT TO PROTECTIVE ORDER" or "SUBJECT TO

30

PROTECTIVE ORDER – ATTORNEYS EYES ONLY" OR "MAY CONTAIN CUI" legend shall be "burned" onto the document's image at a location that does not obliterate or obscure any information from the source document and should generally be centered along the bottom of each image; use Arial font at 12 pt. for this endorsement.

d.      Native files will not be endorsed, but must be assigned a single Bates number for the entire file which will represent the native document in the load/dat file.

e.      The Bates number shall include leading zeros in the numeric portion of the eight-place number.

f.      The Bates number shall be a unique name/number associated with each page (when assigned to an image) or to each document (when assigned to a native file).

g.      For rolling productions, the naming/numbering convention shall remain consistent throughout the entire production. There shall be no spaces between the prefix/container and numeric portion.

h.      For the United States agencies, the Bates prefix will begin with a 3 or 4 character alpha string unique to each agency (prefix to be agreed upon with DOJ prior to use). The first page of each delivery will be an eight-place numeric character or "00000001" with subsequent pages incrementing sequentially by one. Examples:

ABC00000001 = Page 1

ABC00000015 = Page 15

If pages are added later, use a "dot notation" suffix method to label those new pages. Example: 2 new pages are added after page 2:

ABC00000002.001

ABC00000002.002

i.     With respect to the identification of files produced in their native format, the load/dat file will include a reference to the native file path and the DOCLINK production folder that contains the native files ("NATIVELINK" metadata field).

File Naming Conventions. Each page image file shall be named with the Bates number, followed by the extension ".tif." In the event the Bates number contains a symbol and/or character that cannot be included in a file name, the symbol and/or character will be omitted from the file name.

65.    Production Media.

a.     The Parties will produce documents on CD-ROM, DVD, external hard drive, or such other readily accessible computer or electronic media as the Parties may hereafter agree upon (the "Production Media").

b.     .Tif and text files, along with corresponding native files copied to the media should be in labeled folders (images should be saved in folders with a maximum of 2,000 records each).

c.     The media label shall include: (1) the case number of the case in which it is produced, (2) the Producing Party's name (for the United States that should be the specific agency or agencies name), (3) the production volume number for that agency, (4) the date produced, (5) the type of materials on the media (e.g., "Images and text files" or "Custodian Overlay Data"), (6) a "SUBJECT TO PROTECTIVE ORDER" designation or other notation if applicable to the documents provided on that media, and (7) the Bates number range(s) of the materials, if possible; otherwise provide the Bates ranges in an accompanying letter.

d.     All production media must be encrypted with Symantec Endpoint Encryption in accordance with the current Department of Justice security policy. Passwords or decryption keys for the media will be transmitted to

Parties separately from the media delivery (i.e. via e-mail).

66.    <u>Objective/Subjective Coding:</u> Due to the anticipated large volume of hard copy documents that will be produced in this action, the Parties will not produce objective coding or any coding directed or conducted by counsel in these matters ("Subjective Coding").

67.    <u>Extracted Text/OCR.</u> For documents that exist natively in electronic format that have not been redacted, the Parties shall produce extracted text files reflecting the full text that has been electronically extracted from the original, native electronic files. The Parties will produce corresponding OCR text files for all hard-copy documents and any electronic documents that require redaction prior to production or have non-searchable native files (i.e. a nonsearchable pdf). Documents produced as native files (i.e. Audios, Computer-Aided Design ("CAD"), Spreadsheets, Videos, etc.) will not have extracted text or OCR produced.

68.    <u>Use of Search Terms.</u>

a.    As part of an effort to identify and exclude obvious system or other nonuser generated files from productions, all Parties should agree to use the same "de-nisting" method and term list prior to running any case-specific search terms against potential production data.

b.    United States agencies should expect to use the standard list maintained and updated by the National Institute of Standards and Technology ("NIST"). Parties may need to meet and agree on the specific list date or other criteria before collecting Potentially Relevant Information.

c.    In addition to de-nisting, the Parties will meet and confer to identify mutually agreeable search terms for e-mail messages and other ESI.

d.    Plaintiffs shall provide the United States with an initial listing of search terms and the United States shall have the opportunity to propose

modifications to those search terms. Each party may also propose custodians and date limitations for searches and search procedures.

e.     Within thirty (30) days of when the Parties agree on an initial set of search terms and search procedures, the Parties shall conduct a further meet and confer to determine whether modifications should be made to those search terms and search procedures.

f.     The Parties will produce potentially-relevant ESI in their possession according to the agreed search terms, search procedures, custodians, and date ranges.

g.     The Parties acknowledge that the agreement to the use of such search procedures and terms shall not be construed as a waiver of any party's right to request subsequent searches and productions; particularly where there is a showing that the agreed-to search terms and procedures have resulted in inadequate productions or failed to identify relevant materials. The Parties reserve their right to object to any additional requests or subsequent searches, and to limit changes to future searches against new material received;

h.     Documents identified by search terms may be reviewed for privilege, confidentiality, redactions, and relevance or responsiveness prior to production; and

i.     The Parties will produce responsive, non-privileged ESI on a rolling basis so as to provide each other with responsive, non-privileged documents as expediently as possible.

69.     Original Documents. The Parties will retain the original hard-copy documents and original ESI documents. Subject to preservation of appropriate privileges and other protections, the Parties will consider reasonable requests, after any necessary meet and confer, to produce the original copy and source ESI documents of specific documents or groups of documents, or where a document

existed originally in only hard copy format, will make originals of any produced document, and produce .tif and OCR for inspection by the requesting party.

70.    Translation of Produced Materials. For any foreign-language documents responsive to document requests that a party translated or translates into English language for its own purposes, except to the extent such translation is protected by attorney-client or work product privileges, the Producing Party shall produce the translation of the document with the document.

There shall be in this matter a rebuttable presumption of evidence that an e-mail correctly addressed to a recipient was actually delivered to that recipient's e-mail inbox, although it might not have been read by the recipient.

## H.    Document Preservation Not Required for ESI That Is Not Reasonably Accessible.

71.    Except as provided in Paragraph 72, the Parties need not preserve the following categories of ESI for this litigation:

a.    Data stored in a backup system for the purpose of system recovery or information restoration, including but not limited to, disaster recovery backup tapes, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely deleted or written over in accordance with an established routine system maintenance practice;

b.    Voicemail messages;

c.    Instant messages, such as messages sent on AOL Instant Messenger or Microsoft Communicator;

d.    Text messages, such as cell phone to cell phone SMS messages;

e.    Electronic mail sent to or from a personal digital assistant ("PDA") or smartphone (e.g., BlackBerry) provided that a copy of such email is routinely saved elsewhere;

f.    Other electronic data stored on a PDA or smartphone, such as calendar or contract data or notes, provided that a copy of such information is

35

routinely saved elsewhere;

g.     Logs of calls made from cellular phones;

h.     Deleted computer files, whether fragmented or whole;

i.     Data stored in random access memory ("RAM"), cache memory, or in temporary or cache files, including internet history, web browser cache and cookie files, wherever located;

j.     Data stored on photocopiers, scanners, and fax machines;

k.     Server, system, or network logs;

l.     Electronic data temporarily stored by scientific equipment or attached devices, provided that the data that is ordinarily Preserved as part of a laboratory report is, in fact, Preserved in its ordinary location and form; and

m.     Data stored on legacy systems that were no longer in use five years before the complaint was filed.

72.     Notwithstanding Paragraph 71, if on the date of this agreement either Party has a Policy that results in the routine preservation of any of the categories of information identified in Paragraph 71, such Party shall continue to preserve such information in accordance with its Policy.

73.     Nothing in this Order prevents any Party from asserting, in accordance with the Federal Rules of Civil Procedure, that other categories of ESI are not reasonably accessible within the meaning of Rule 26(b)(2)(B).

**I.     Use of Documents During Litigation.**

74.     Notwithstanding any other provision of this Order, the Parties may take any of the following actions with respect to documents and ESI.

a.     Parties may, to the extent necessary to carry out their ordinary duties, edit non-final documents that do not meet the definition of "Draft" in Paragraph 1. However, the Parties shall preserve Draft documents for discovery.

36

b.     The Parties may move unfiled documents or ESI into files or folders that adhere to an organizational scheme that was created before the complaint was filed in this matter.  Nothing in this paragraph prevents the Parties from implementing an organizational scheme that applies only to documents or ESI created after the complaint was filed in this matter.

c.     The Parties may delete, overwrite, or wipe ESI from devices that are being replaced, upgraded, reimaged, disposed of, or returned at the end of a lease, provided that the potentially relevant ESI is first copied to a new location in a manner that preserves the data, including metadata (to the extent it exists) that will be produced pursuant to Section G of this Order.

d.     The Parties may copy data from one device to another, or from one location to another, provided that a copy of the ESI remains accessible in the first location or the new copy is created in a manner that preserves the data, including metadata (to the extent it exists) that will be produced pursuant to Section G of this Order.

e.     The Parties may load loose ESI into an enterprise content management system, provided that: (1) the enterprise content management system captures all of the metadata fields (to the extent they exist) that must be produced under this Order and does not convert the format of the ESI in a way that alters or makes it significantly less accessible; or (2) the Parties maintain a copy of the ESI in its native format and make their production from this native file collection.

f.     The Parties may upgrade, patch, reprogram, or customize software that stores relevant data, even if such actions alter the way data is maintained, stored, or viewed.

g.     The Parties may take any of the following actions with respect to data in a database provided that it is part of the routine use of the database:

input additional data; access data; update the software running the database; append new data; and modify existing data.

h.      The Parties may edit or take down any data on a publicly accessible internet site, provided that a copy of the data is made before the change and is Preserved for discovery. The Parties may add data to an intranet or private website. The Parties may edit or take down any data on an intranet or private website, provided that a copy of the data is made before the change and is Preserved for discovery.

i.      The Parties may compress, decompress, encrypt, or decrypt data subject to preservation in this matter provided that any data losses during such processes do not result in loss of the metadata (to the extent it existed) required to be produced under this Order or significantly degrade the quality of the data.

j.      The Parties may update social media sites, but may not take affirmative steps to delete or alter relevant data posted before the filing of the Complaint.

**J.      Preservation Does Not Affect Discoverability or Claims of Privilege.**

75.      By preserving documents or ESI for the purpose of this litigation, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

**K.      Other Preservation Obligations Not Affected.**

76.      Nothing in this Order shall affect any other obligations of the Parties to preserve documents or information for other purposes, such as pursuant to court order, administrative order, statute, or in response to other anticipated litigation.

**L.      Meet and Confer Requirements.**

77.      Discovery Disputes. Before filing any motion with the Court regarding electronic discovery or evidence, the Parties will meet and confer in a

good faith attempt to resolve such disputes.

78.     Third-Party Data. The Parties will meet and confer before serving any subpoenas in this matter on commercial e-mail providers, such as Google™ or Yahoo™, or any social media companies such as Facebook™ or Twitter™.

**M.     Costs of Document Production.**

79.     Unless this Court orders otherwise for good cause shown, each Party shall bear the costs of producing its own documents.

**N.     Expert Discovery.**

80.     Each Party shall not pursue through discovery, trial subpoena or otherwise:

a.     Notes taken by a witness required to provide a report under Fed. R. Civ. P. 26(a)(2)(B);

b.     Communications between a witness required to provide a report under Fed. R. Civ. P. 26(a)(2)(B) and a Party's representative—including, but not limited to, another witness required to provide a report under Fed. R. Civ. P. 26(a)(2)(B)—regardless of the form of the communications, except to the extent that the communications:

1.     Relate to compensation for an expert's study or testimony;

2.     Identify facts or data that a Party provided and that the expert considered in forming the opinions to be expressed; or

3.     Identify assumptions that a Party provided and that the expert relied upon in forming the opinions to be expressed.

81.     The Parties shall bear the costs of their own testifying experts in responding to discovery, and shall not require the Party seeking discovery to pay the other Party's testifying expert any fee for the time spent in responding to discovery.

**O.     Enforcement and Modification of This Discovery Order**

82.     If any party has cause to believe that a violation of this Order has

1   occurred or is about to occur, it shall have the right to petition this Court for

2   appropriate relief.

3       83.    For good cause shown, any party may seek modification of this

4   Order. No part of the provisions of this Order may be modified except in

5   accordance with this Order. The provisions of this Order, and any subsequent

6   amendments thereto and modifications thereof shall continue to be binding after

7   the termination of this case unless otherwise ordered.

8       84.    Any party seeking modification of this Order must first provide

9   counsel for all Parties with at least ten (10) days written notice prior to filing any

10  such motion with the Court. During that 10-day period, the Parties shall attempt to

11  agree to a proposed modification. If such agreement is reached, the Parties shall

12  execute a stipulation setting out such modification, which will then be presented to

13  the Court for approval. If no agreement is reached within the 10-day period, the

14  party seeking the modification may apply to the Court for such relief upon notice

15  to all Parties. The Court shall provide an opportunity for the Parties to present their

16  respective views to the Court before approving a stipulated request for

17  modification or before granting a motion seeking modification.

18      85.    Nothing in this Order shall be construed to compel the United States

19  to produce information that, under law or agreement, it is prohibited from

20  producing, including, *inter alia*, information protected from compelled disclosure

21  by a Certificate of Confidentiality or an Assurance of Confidentiality issued

22  pursuant to the Public Health Service Act, 42 U.S.C. §§ 241(d), 242m(d), and/or

23  CIPSEA; confidential substance abuse information protected by 42 U.S.C. §§

24  290aa(n) or 290dd-2; visa application material protected by 8 U.S.C. § 1202(f);

25  information subject to the confidentiality provision of section 12(c) of the Export

26  Administration Act of 1979, as amended (50 U.S.C. app 2411(c); or information

27  protected by Federal Rule of Criminal Procedure 6(e).  Nothing in this Order shall

28

1    be read to enhance or negate any argument that any such laws, provisions, or

2    regulations apply to any particular document.

3    **P.     Integration/Appendices.**

4          86.    The following documents are incorporated herein by reference:

5          "Appendix A" is a table describing the fields to be included in the load

6    file produced by each Party.

7          "Appendix B" is the "Acknowledgment of Master Discovery And

8    Protective Order."

9          SO ORDERED this 16th day of February, 2016.

10

11   _____

12   UNITED STATES MAGISTRATE JUDGE

13   This protective order does not authorize the parties to file documents under

14   seal.  Under seal filings are governed by Local Rule 79-5.

                                                                    PJW

15

16

17

18

19

20

21

22

23

24

25

26

27

28